DEEP ROCK OIL COMPANY OF WISCONSIN, Respondent, vs.
DEROUIN, imp., Appellant.

*November 11—December 6, 1927.*

*Workmen's compensation: Liability of principal to employees of
contractor or subcontractor: When relation of contractor
exists.*

1. An oil company engaged in marketing petroleum products made
   a "bulk station" agreement with a local corporation whereby
   it leased a plant and equipment at an annual cash rent plus a
   fraction of a cent on gallonage sold, and also made a "service
   station" agreement relative to filling stations in the county.
   *Held,* that the business of the local distributor in disposing of
   the product furnished by the lessor was its separate and pri-
   vate business, and in so far as there was any relation other
   than that of landlord and tenant between the two companies, it
   was that of parties to an executory sales agreement.   p. 375.
2. The term "contractor" as used in the workmen's compensation
   act does not include within its scope the relations existing
   between the two companies, and a workman cannot recover
   under sec. 102.06 compensation from the marketing company
   for injuries sustained while employed by the local concern.
   p. 376.

APPEAL from a judgment of the circuit court for Dane
county: A. G. ZIMMERMAN, Circuit Judge.   *Affirmed.*

This action was brought by the *Deep Rock Oil Company
of Wisconsin* to reverse an award of the Industrial Com-
mission made against it in favor of *Etta Derouin,* widow of
Arthur Derouin, who was killed while performing services
for the Brown County Deep Rock Oil Company.   The cir-
cuit court vacated and set aside the award, from which judg-
ment *Etta Derouin* appealed.

For the appellant there was a brief by *Kittell, Jaseph,
Young & Everson* of Green Bay, and oral argument by
*John A. Kittell.*

For the respondent there was a brief by *Olin & Butler* of
Madison, attorneys, and *Cummins, Roemer & Flynn* of Chi-

cago and *H. L. Butler* of Madison, of counsel, and oral argument by *Mr. Butler.*

For the defendant Industrial Commission there was a brief by the *Attorney General* and *Michael J. Dunn, Jr.,* assistant attorney general, and oral argument by *Mr. Dunn.*

OWEN, J.   The award was against the Brown County Deep Rock Oil Company and the *Deep Rock Oil Company of Wisconsin.* The applicant's decedent was in the employ of the Brown County Deep Rock Oil Company at the time he sustained injuries resulting in his death.   The Brown County Deep Rock Oil Company did not carry insurance. The Industrial Commission found that the Brown County Deep Rock Oil Company was a contractor under *Deep Rock Oil Company of Wisconsin,* and rendered the award against *Deep Rock Oil Company of Wisconsin* pursuant to the provisions of sec. 102.06, Stats., which provides:

"An employer subject to the provisions of sections 102.03 to 102.34, inclusive, shall be liable for compensation to an employee of a contractor or subcontractor under him who is not subject to sections 102.03 to 102.34, inclusive, or who has not complied with the conditions of subsection (2) of section 102.28 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer."

Sub. (2) of sec. 102.28 requires all employers under the act to carry compensation insurance.   As the Brown County Deep Rock Oil Company did not carry compensation insurance, the *Deep Rock Oil Company of Wisconsin* is subject to the award if in fact the Brown County Deep Rock Oil Company was a contractor under it.   The *Deep Rock Oil Company of Wisconsin* contends that the Brown County Deep Rock Oil Company was not a contractor under it, and hence it was not subject to the award under the statutory provisions referred to.

The *Deep Rock Oil Company of Wisconsin* was and is engaged in marketing the refined products of the Shaffer

Oil & Refining Company, known and designated as "Deep Rock Products." For such purpose it owned certain plants, buildings, and service stations in Brown county, Wisconsin. On the 16th day of March, 1925, it entered into certain leases and agreements with the Brown County Deep Rock Oil Company, and whether the Brown County Deep Rock Oil Company was a contractor under *Deep Rock Oil Company of Wisconsin* depends upon the effect of such leases and agreements.

The first of such agreements to which we shall refer is called the "Bulk Station Agreement." That agreement recites that the *Deep Rock Oil Company of Wisconsin* is desirous of marketing its products in Brown county through a local organization, and that it is contemplated and desired that said local organization shall continue and enlarge the business as far as possible developed in that territory. To this end the *Wisconsin Company* "hereby leases and rents to the second party [Brown County Company] the plants, buildings, and stations of said *Deep Rock Oil Company of Wisconsin* and Home Oil Company, so to do, which said plants, buildings, and stations are now located in the cities of Green Bay and De Pere, Brown county, Wisconsin, on property owned by *Deep Rock Oil Company of Wisconsin.*" It is then provided that "this lease is made subject to all the terms, provisions, and conditions set forth in 'Exhibit C,' hereto attached and made a part hereof." The lessee agrees to faithfully comply with all the provisions of Exhibit C, and to indemnify and hold harmless the lessor against any injury to or death of any persons or damages to property resulting from any failure to comply with all such provisions. (Exhibit C was not introduced in evidence and the import of that provision of the lease does not appear.) The lease is to continue for the term of one year. The rental is fixed at $43.50 per annum plus one quarter of one cent on each and every gallon of petroleum products sold by said first party to said second party at said station. Lessor agrees to re-

place all portions of physical property when they become worn out. Lessee agrees to deliver up the property at the expiration of the lease in as good condition as when the same was entered upon by the said lessee, "loss by fire and inevitable accident and ordinary wear and tear excepted." Lessor agrees to furnish lessee its refined products at such stations in such quantities as may be ordered by the lessee, and the lessee agrees to handle lessor's products exclusively at such stations. It is agreed that goods so ordered shall be delivered at a price f. o. b. the refinery of Shaffer Oil & Refining Company, located at Cushing, Oklahoma, with shipping charges allowed to the destination on a railroad to which the same may be consigned. It is agreed that the lessor will insure the property so leased, but that the lessee will upon demand repay to the lessor the amount of the premiums. Lessee is required to maintain the property in the best condition and repair possible, but it shall not be liable for extraordinary repairs necessitated by acts of God or other causes beyond its control. The lessee agrees to pay all taxes, licenses, and inspection fees assessed or levied against the property. In case of the failure on the part of either party to carry out the terms of the lease or agreement, it is provided that the other party may terminate the lease. The lease contains a further stipulation to the effect that if the lessee desires to install additional bulk-distributing stations, the lessor may purchase or lease the site or sites and supply all lumber and material for the erection of such additional stations, and such additional stations shall automatically come under the terms of this agreement. It is further stipulated that if the lessor installs other stations in the territory, such stations will be leased to the lessee. It is further stipulated that the lessor will not sell "Deep Rock" products to any person or corporation other than the lessee for resale within the territory covered by this agreement. It is further agreed that upon the termination of the lease by lapse of time or

otherwise the lessee will assign and transfer to first party or to such other person or persons as first party may direct in writing the corporate stock issued by second party.

The second agreement is a lease by the *Deep Rock Oil Company of Wisconsin* to the Brown County Deep Rock Oil Company of the filling stations of the *Deep Rock Oil Company of Wisconsin* owned or controlled by it in Brown county. This is called the "Service Station Agreement." It is made subject to the provisions of the "Bulk Sales Agreement." The lessee agrees that it will handle only the "Deep Rock" products through such stations; that should lessee sell gasoline or kerosene through the filling station at less than the service station price furnished to the lessee by the lessor, and if at any time the lessee violates this portion or any other portion of this agreement, lessor may at its option immediately terminate this agreement. Lessee also releases, relinquishes, discharges, and agrees to indemnify, protect, and save harmless lessor from any and all claims, demands, and liabilities for any loss, damage, injury, or other casualty to life or property (whether it be that of either of the parties hereto or third persons) and to persons (whether they be employees of either of the parties hereto or third persons) by reason of any leakage, fire, or explosion of or from said equipment or appliances or any part thereof or of any oil or gas contained therein or thereabout through any defect in the construction, installation, use, or operation of such equipment or appliances of the property herein referred to.

The legal relations existing between the Brown County Company and the *Wisconsin Company,* so far as they are material to the question here presented, depend upon these two agreements. It is very plain that the relation of lessor and lessee is created by these two documents. It is claimed, however, that the agreements are more than leases, and that to say that they merely establish the relation of lessor and lessee is to ignore many of the provisions thereof. It is true

that the leases contain many stipulations not essential to or usual in leases. It is apparent that the dominant purpose of the agreements was to afford a method of marketing the "Deep Rock" products in Brown county, and that the *Wisconsin Company* retained very broad control over the property leased in order to protect its business and the good will of the "Deep Rock" products. Whether, those provisions establish any other relation than that of lessor and lessee well may be considered. Aside from the leasing of the property, the dominant provision seems to be that the *Wisconsin Company* agrees to sell and deliver its products to the Brown County Company at the price therein stipulated, and the Brown County Company agrees that it will not sell the "Deep Rock" products at a price less than that designated by the *Wisconsin Company*. It would seem that these agreements constituted either the relation of principal and agent or vendor and purchaser. "Said first party [*Wisconsin Company*] agrees to furnish second party [Brown County Company] in said territory the refined products of said Shaffer Oil & Refining Company, known as Deep Rock products, for the sale at said stations in such quantities as may be ordered by second party." "It is agreed and understood that all orders for goods to be delivered for destination at a railroad station to the second party hereunder shall be filled by Shaffer Oil & Refining Company, and that all goods shall be delivered at a price f. o. b. the refinery of Shaffer Oil & Refining Company, located at Cushing, Oklahoma, with shipping charges allowed to the destination on a railroad to which the same may be consigned. It is further agreed and understood that the foregoing portion of this section refers to carload orders, on which carload freight rates apply. In the event of less than carload purchases of gasoline, kerosene, lubricating oils, and greases, the second party agrees to pay all freight charges from point of shipment to destination on a railroad." It is worthy of comment that first party agrees to "furnish" second party with

Deep Rock Oil Co. v. Derouin, 194 Wis. 369.

its products. It does not agree to "sell." "It is agreed and understood that all orders for goods to be delivered for destination at a railroad station," etc. Here, again, neither the term "sell" nor "purchase" is used. Then, again, it is not provided anywhere in the agreement in express terms that the Brown County Company will pay for the products. The language thus employed, whether purposely equivocal or inadvertent, very naturally gives rise to the contention that it was not intended to create the relation of vendor and vendee, but that the Brown County Company was intended to be used by the *Wisconsin Company* as a mere medium through which its products should be marketed in Brown county, the *Wisconsin Company* retaining at all times complete direction, control, and domination of the business. This thought is further supported by the absence of any provision fixing the time or manner of payment of the products thus delivered. But, on the other hand, the contract is just as barren of any provisions indicating that an agency or the relation of bailor and bailee was intended. There is no provision in the agreement by which the *Wisconsin Company* retains title to the products delivered. There is no provision requiring the Brown County Company to account for the proceeds of the sales of the product. The *Wisconsin Company* reserved no right to direct the method of conducting the business. Taking the agreement by its four corners, we must come to the conclusion that when products are delivered by the *Wisconsin Company* to the Brown County Company title thereto passes to the Brown County Company, and that thereafter the *Wisconsin Company* has no title thereto or lien thereon. The business of the Brown County Company in disposing of the products is a separate and distinct business, prosecuted by them for their own profit, and that so far as the agreement creates any relation other than that of lessor and lessee it amounts to an executory sales contract.

This being our view of the contract, it becomes necessary now to consider whether the *Wisconsin Company* is liable

for compensation to which applicant is entitled under the compensation act, which makes an employer subject to the provisions of the act liable to an employee of a contractor or subcontractor under him. Of course any one who enters into a contract with another is in a sense a contractor, but the legislature certainly did not intend to make an employer liable to the employees of one with whom he had any sort of contractual relations. It is plain that the term "contractor" as used in the compensation act must receive a restricted meaning. We do not deem it necessary or wise to undertake to define its scope at this time. It is sufficient for the purposes of this case to say that it does not cover the relations existing between the *Deep Rock Oil Company of Wisconsin* and the Brown County Deep Rock Oil Company. There was no basis for the award made by the Industrial Commission against the *Deep Rock Oil Company of Wisconsin,* and the circuit court properly set it aside.

*By the Court.*—Judgment affirmed.