THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of HARRY COHEN, Pláintiff, *v.* BARNEY LEVINE, Defendant.

Municipal Term of Court of Special Sessions of New York, Borough of Manhattan, May 26, 1936.

*John J. Bennett, Jr., Attorney-General* [*Patrick J. Hughes, Assistant Attorney-General,* of counsel], for the plaintiff.

*Samuel G. Litwin,* for the defendant.

PERLMAN, C. M. The defendant is charged with failing to secure payment of compensation for his employees as provided for in section 50 of the Workmen's Compensation Law. Under section 52 of this law, a violation of section 50 is a misdemeanor punishable by a fine of not more than $500, or imprisonment for not more than one year, or both.

Harry Cohen, an investigator of the New York State Department of Labor, testified that on April 14, 1936, he found two persons named Alexander Scheffer and Reier Stip working on a sand-blasting job on Park avenue and Eighty-eighth street, in the city and county of New York.

According to this investigator, the defendant stated to him that he was the contact man; that he obtained the order for this particular job; and that he sent Alexander Scheffer and Reier Stip to perform the work on this job. The defendant carried no compensation insurance for said Alexander Scheffer and Reier Stip and, upon further inquiry by the investigator, the defendant stated that he " made every effort to get compensation insurance but that the rate was too prohibitive."

The defendant now contends that Scheffer and Stip were not his employees but his partners in connection with this job. In support of this contention the defendant offered in evidence an alleged partnership contract. In addition, the defendant and Reier Stip, by oral testimony, described their relationship as being partners.

The question to be determined is whether the defendant was the employer of Scheffer and Stip, or either of them. If Scheffer and Stip were actually the partners of this defendant, then the defendant cannot be guilty of the offense charged.

The general rules that must govern this case are undisputed, and the only controversy is as to their application to the alleged partnership contract between the defendant and his alleged partners, and the facts and circumstances surrounding their employment.

The courts of this State have consistently held that a member of a partnership cannot be an employee thereof within the contemplation of the Workmen's Compensation Law. (*Lyle* v. *Lyle Cider & Vinegar Co.*, 243 N. Y. 257; *Matter of Munter* v. *Ideal Peerless Laundry*, 229 App. Div. 56; *Matter of Duprea* v. *Duprea Bros.*, 224 id. 673.)

I have recently held that even though a partnership was created to evade the requirements of the Workmen's Compensation Law, no liability may be imposed if a partnership in law and in fact was created. (*People* [*Complaint of Fogarty*] v. *Kaplan*, 160 Misc. 179.) I urged in that case that the anomalous situation which adherence to common-law conception of a partnership entity created, could be remedied by legislative action and all disputes avoided. Many States have amended their Workmen's Compensation Law to include working members of a partnership.

The Workmen's Compensation Law was passed pursuant to a widespread belief in its value as a means of protecting working men and their dependents from want in case of injury while engaged in certain specified employments. It was the intention of the Legislature to secure such injured workmen and their dependents from becoming objects of charity, and to make reasonable compensation for injuries sustained or death incurred by reason of such employment a part of the expense of the lines of business included within the definition of employments as stated in the act. (*Matter of Post* v. *Burger & Gohlke*, 216 N. Y. 544, 553.)

The act, in view of its humane purpose, should be so construed as to limit the exemptions and exceptions.

The immunity granted by interpretation of our act to working members of a partnership has resulted in an epidemic of partnerships in the hazardous trades and occupations in order to save the cost of insurance under the Workmen's Compensation Law. The perpetrators of these plans are not concerned with the fact that injuries to those alleged partners, who frequently are laborers and willing to enter into any agreement for employment, may cause them and their dependents becoming objects of charity. Nor are the perpetrators of these plans concerned with the fact that their ill-planned economy enables them to compete unfairly with others who comply with our laws and statutes, who do not seek refuge in such subterfuges. This practice of forming so-called partnerships with laborers engaged in hazardous occupations has become obnoxious and entirely too prevalent.

The failure of our Legislature to amend our Workmen's Compensation Law to include working members of a partnership does not preclude the courts from determining whether or not a partnership was, in truth and in fact, created. The mere production of an agreement signed by the laborers describing their relationship as partners, or declarations of the interested parties as to their relationship, are not conclusive upon this court. Statutes are not so easily circumvented.

Contracts may be adroitly framed to suggest a relationship other than master and servant, but, obviously, courts may look behind the legal terminology to discover and expose the real relationship between the parties.

In *Matter of Glielmi* v. *Netherland Dairy Co., Inc.* (254 N. Y. 60), the employer contended that a certain claimant injured while driving a wagon was not his servant, but an independent contractor. The employer produced a contract under which the claimant was employed and which was so worded as to suggest this latter rela-

tionship. The Court of Appeals did not hesitate to look behind the contract to discover and expose the real relationship and affirmed an award in favor of the claimant.

Written articles of copartnership certainly do not foreclose an inquiry into the question whether the parties intended to and actually did create a real partnership. In *Martin* v. *Peyton* (246 N. Y. 213, 217) ANDREWS, J., wrote as follows: " Assuming some written contract between the parties the question may arise whether it creates a partnership. If it be complete; if it expresses in good faith the full understanding and obligation of the parties, then it is for the court to say whether a partnership exists. It may, however, be a mere sham intended to hide the real relationship, Then other results follow. In passing upon it effect is to be given to each provision. Mere words will not blind us to realities. Statements that no partnership is intended are not conclusive. If as a whole a contract contemplates an association of two or more persons to carry on as co-owners a business for profit a partnership there is. (§ 10.)* On the other hand, if it be less than this no partnership exists. Passing on the contract as a whole, an arrangement for sharing profits is to be considered. It is to be given its due weight. But it is to be weighed in connection with all the rest. It is not decisive. *It may be merely the method adopted to pay* a debt or *wages*, as interest on a loan or for other reasons." (Italics mine.)

This leads us to a discussion of the facts in the instant case.

Prior to October, 1934, the defendant was a stockholder in a corporation known by the name of " Star Sand Blast Cleaning Company, Inc." Alexander Scheffer and Reier Stip, now alleged partners of the defendant, were formerly employees of that corporation. A chattel mortgage on the machinery and fixtures of the corporation was owned by the wife of the defendant. Around October 20, 1934, the Star Sand Blast Cleaning Company, Inc., became involved in financial difficulties and the machinery of the corporation came into the possession of the defendant's wife after a foreclosure sale. Thereafter and on October 20, 1934, the defendant filed with the office of the county clerk, in his own behalf, a certificate of doing business under the name of the Star Sand Blast Cleaning Company, formerly the name of the corporation. The defendant maintained the same premises formerly occupied by the corporation, the rent for which he personally paid. The defendant testified that after the termination of the corporation's business he formed a partnership with Alexander Scheffer and one John Virkus, which partnership continued presumably until July of 1935. No new cer-

---

* Partnership Law, § 10.

tificate of doing business under an assumed name was filed. Scheffer and Virkus performed the manual labor and the defendant was the " business getter."

In August, 1935, the defendant allegedly formed a new partnership and Reier Stip was substituted in place of John Virkus. And, for approximately a week or two in connection with another job, the defendant created another alleged partnership between himself, Alexander Scheffer and William Ahlgreen.

The defendant testified that all work was obtained in the name of the Star Sand Blast Cleaning Company, of which he was the sole owner. He would apparently then hire himself, Scheffer and Reier, composing the alleged partnership, or he would hire whatever partnership was created for that particular job, for the actual performance of the work. He himself did no manual labor. The defendant received not only his equal share of the profits, but there was first deducted for the Star Sand Blast Cleaning Company, which he owned, ten per cent of the contract price for his commissions, and expenses for advertising, and rent. Concededly, the cost of the advertising, if any, was very nominal. The rent charge was, according to the testimony, only five dollars a month. In addition, the defendant paid to his wife from the proceeds of the jobs thirty dollars a month for the use of the truck and other machinery held in her name.

The alleged partnerships maintained no books of account or other records and filed no income tax reports. All materials used by the partnerships were purchased and paid for by the defendant from his personal bank account, and allegedly deducted by him after the performance of the work and before the division between the alleged partners.

I will not lend this court's aid to the circuitous plan conceived by the defendant to evade the requirements of the Workmen's Compensation Law. No microscope is necessary to discover the real relationship between the parties. Behind the partnership cloak there existed in fact a master-servant relationship.

Accordingly, I find the defendant guilty of failing to secure compensation to his employees in violation of section 50 of the Workmen's Compensation Law.