York, Respondent, vs. Industrial Commission, Defend-
ant: Employers Mutual Liability Insurance Com-
pany and another, Appellants.

*October 16—November 10, 1936.*

142

144

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Arthur Larson* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb* and *Mr. Larson.*

For the appellant Schlimgen Memorials, Inc., there was a separate brief by *Bull, Biart & Bieberstein* of Madison, and oral argument by *A. J. Bieberstein.*

For the respondent there was a brief by *Olin & Butler,* and oral argument by *Byron H. Stebbins,* all of Madison.

FOWLER, J. This is a workmen's compensation case. The Industrial Commission denied compensation on the ground that the relation of employer and employee did not exist. The employee brought action to review the order denying compensation. The circuit court held that under the undisputed facts the plaintiff was an employee of the defendant Schlimgen Memorials, Inc., and vacated the order and returned the record to the commission with directions to determine whether the employee suffered compensable injury, and to award compensation if it found that he did.

The appellants contend that upon the facts as detailed in the statement preceding the opinion a valid partnership was created and that the relationship created between the company and the partnership was that of employer and independent contractor. The respondent contends that the contracts are a mere subterfuge to evade the Workmen's Compensation Act, and that as such they are invalid; and that being invalid the relation between the company and each of the individuals constituting the so-called partnership is that of master and servant and renders the company subject to the Workmen's Compensation Act.

It is true that some of the provisions of the lease agreements may be considered as a subterfuge. For instance, it is quite plain that the company was not a sales agent for the partnership in selling its products, and that the partnership did not in fact buy the stone that went into the finished product from the company. The fact manifestly is that the company was selling its own merchandise and buying the stone that entered into that merchandise. The upshot of the whole arrangement was that the company let to the partnership the performance of the work that entered into its merchandise, and agreed to pay therefor a stipulated price for the several items of work that entered into the finished article. But that the lease agreement designates as constituting buying and selling that which is not such, does not render either the part-

nership agreement or the agreements between the company and the partnership void. It matters not what the parties designated the legal effect of their agreements to be.

It is also plain that the purpose behind the arrangement was to evade liability for compensation under the Workmen's Compensation Act. But if the contracts were valid, that they were entered into for this purpose does not bring the company and the individual partners within the act. As well say that one receiving a salary such as renders him subject to an income tax should not avoid payment of the tax referable to his salary by offsetting against it capital losses which the law allows him to offset. By so doing one may avoid subjection to the income tax, but as in so doing he has done nothing forbidden by the law, his income to the amount of the offset is not subject to the tax. Perhaps a more closely analogous situation is that involved in *Jenkins v. Moyse,* 254 N. Y. 319, 172 N. E. 521. Usury avoids contracts in New York, but corporations may not interpose usury as a defense. The plaintiff applied to the defendant for a loan. The defendant would not make the loan for the legal rate, but proposed that if the defendant would incorporate and convey his property to a corporation he would loan the corporation the amount desired. The plaintiff created a corporation, of which he was the sole stockholder, and conveyed his property to the corporation. The defendant then loaned the corporation $27,000, and took a mortgage on the property for $45,000 which was grossly usurious. It was held that as nothing had been done to evade usury that the law did not permit, the mortgage was valid. As said in a prior New York case, *Union Dime Savings Inst. v. Wilmot,* 94 N. Y. 221:

"The parties had a perfect right to deal with each other with the usury laws before their eyes, and to so shape the transaction as to avoid the condemnation of those laws," although "in one sense it took the form it did for the purpose of escaping usury."

So here, the transaction being such as is legally permissible, it is not rendered illegal, although it took the form it did for the purpose of escaping the Workmen's Compensation Act.

A case directly in point here is *McCormick v. Sears, Roebuck & Co.* 254 Mich. 221, 236 N. W. 785, wherein it was held that a workman has the right to contract with one who secures roofing jobs and supplies all material therefor at a flat rate of a stated price per square foot, the workman agreeing to employ all helpers and exercise complete supervision over the work, and to save the other party harmless against claims for compensation. That the purpose of the arrangement is to avoid liability for compensation on the part of the one who procures the jobs or furnishes the material does not vitiate the contract. The workman so contracting has no claim against the other party for compensation if injured in performing the work. Upon like reason the rule of this case applies where two or more workmen as partners make a contract for a similar purpose.

Upon hearing of respondent's application for compensation the examiner found, and the commission approved the finding, that a partnership was entered into between the applicant and the other workmen, and that the shop lease from the company was executed with full knowledge by the partners of the purpose of the arrangement "that work would be afforded them and the . . . [company] would be released from any liability under the compensation act; that such lease was entered into in good faith between the parties and is binding upon the parties; that no fraud" was practiced by the company to induce the arrangement. No contention is made herein that any fraud was practiced by the company or that the arrangement was not entered into in good faith. We venture to say that nobody would consider the arrangement as in any way tainted with illegality but for the fact that the purpose behind it was to avoid liability for compensation

under the Workmen's Compensation Act. But for this purpose, the relation thereby created would unquestionably be considered as that of employer and independent contractor, rather than that of master and servant. That a partnership was in effect created is manifest. Both the partnership agreements and the way the business was carried on show this. There was no specific agreement to share losses, but where there is an agreement to share profits, without any express stipulation for sharing losses, a partnership is created. *Clinton Bridge & Iron Works v. First National Bank of Darlington,* 103 Wis. 117, 79 N. W. 47. Had the company been sued by a third person during the continuance of the arrangement to recover for any supplies purchased by any of the partners used in conducting the business, or for the power furnished for operation the machines used in conducting the business, there would have been no liability. Power bills which ran as high as $75 in one month were uniformly paid by the partnership direct to the utility that furnished the power. The partnership on one occasion let out the use of certain of the leased machinery and received $35 for its use. Had an individual partner sued the company for the reasonable value of the work performed by him, he could not have recovered on the ground that the contracts were void. The contracts being valid for all other purposes, as they unquestionably were, they were also valid in creating a partnership and a lessor-lessee relationship, and a relationship of employer and independent contractor between the company and the partnership instead of that of master and servant between the company and the individual partners.

The respondent contends that liability for compensation cannot be avoided by such partnership agreements as the one involved and that "other states unanimously so hold." The cases cited involve situations by no means "such" as the instant one. In *Utility Coal Co. v. Rogez,* 170 Okla. 264, 39 Pac. (2d) 60, persons owning the right, as partners to mine

coal on certain lands and employing one hundred or more men as miners, formed corporations in which the owners of the rights owned all the stock, and these corporations entered into agreements with an association comprised of its miners signing the contracts and certain of the officers and owners of the corporate stock whereby the miners instead of receiving daily wages, were to receive a proportion of the net earnings of the mine. This association was designated as a partnership. No miner not signing the agreement was permitted to work in the mine. Any miners were dropped on quitting work and miners who were not original signers by signing and working in the mines became parties to the contract. There was no lease of the company property. All tools and livestock used in operating the mine were owned by the corporation. Officers and stockholders of the corporation who signed the association agreement were by the agreement in managerial positions in the association. The association was held not to constitute a partnership because it was not the intent of the agreement to form a partnership, there was no intent to share losses that might result from mine operations, and there was no such community of interest as concerned third persons as enabled a member of the association to contract with such persons. One provision of the association agreement was similar to the provision of the instant lease agreement that purported to make one of the owners of the corporate stock a selling agent for the association, but inspection of the agreement set out in the opinion of the court discloses no other points of similarity to the instant agreement except that members were not to receive a stated daily wage. Two other cases cited to the point stated are companion cases to the *Rogez Case, supra*. Another Oklahoma case cited by respondent in support of his contention is *Drumright Gas Engine Co. v. Sherrill,* 173 Okla. 147, 46 Pac. (2d) 921. This case presents no similarity to the instant one except that the workers involved were not to re-

ceive a daily wage. The company took the job of dismantling an oil tank at a specified rate per ton of the dismantled sheets of steel comprising the tank. It then made an arrangement with three workmen to do the work of dismantling for one half the gross amount received for the job, the company to stand all expense connected therewith. The company had compensation insurance for its employees, but as the class of work called for by the dismantling job carried a higher rate of insurance than the other work carried on by the company, the company took out a policy to cover the workmen on this particular job. One of the three workmen was injured during the progress of the work. The manager of the company thereupon employed another man to take his place. The injured man was immediately sent to a doctor by the company manager. On completion of the job the company received $448.12. One half of this amount they paid to the workmen, one third to each of the original workmen, and one third was divided between the injured workman and the one employed by the company to take his place. The company paid $103.53 to secure compensation insurance for the workmen for this particular job, and charged this expense to the job, and with this charge sustained a small loss on the job. In reporting the accident to the industrial commission, the company stated that the injured man was its employee and was injured while in its employment. The agreement between the company and the owner of the tank provided that the company was to assume all liability that might occur to their employees during progress of the work. The industrial commission found that the relation of employer and employee existed, but the circumstances stated are manifestly so different from those here involved that the case is not in point.

Another case cited by respondent is *Butz v. Hahn Paint & Varnish Co.* 220 Iowa, 995, 263 N. W. 257. It was claimed therein that an applicant for compensation was a

partner with the person of whom he claimed to be an employee. The facts of the case are entirely dissimilar to those here involved. One basis of denial of the partnership relation was that the agreement between the injured man and his alleged partner was oral, and was for sharing of profits with no agreement to share losses. The Iowa court holds that an agreement to share losses as well as profits must be expressly made in order to constitute a partnership. As above pointed out, this is not the law in this state. *Clinton Bridge & Iron Works v. First National Bank of Darlington, supra.* The holding of the latter case is expressly approved in *Langley v. Sanborn,* 135 Wis. 178, 181, 114 N. W. 787. The law thus declared has never been overruled by the court, and is consistent with the law of partnership as declared by the Uniform Partnership Act, sec. 123.03 (1), Stats.

A decision by a judge of the magistrate's court of the city of New York, *People v. Levine,* 160 Misc. 181, 288 N. Y. Supp. 476, is relied on, in which a fine was imposed on the defendant for doing business without taking out indemnity insurance for his employees as a criminal statute required. He defended on the ground that the men engaged at work under contracts that he took were his partners. The factual situation involved was entirely dissimilar to the instant one. But giving the case its full weight as authority, which at most is but little, it is more than offset by another decision of the same court by the same judge, *People v. Kaplan,* 160 Misc. 179, 288 N. Y. Supp. 474, in which a like charge was dismissed because the defendant had formed a partnership with the workmen doing the work of demolishing a building by which they all agreed to share equally in the "obligations and profits" of the contract, although the partnership was formed for the purpose of avoiding liability under the Workmen's Compensation Act.

The above general discussion is perhaps sufficient to cover the case, but some particular contentions of the respondent

respecting invalidity of the contracts should perhaps be treated.

Respondent attacks the leasing agreement with its privilege of determination and rent determinable by the amount of business done by the company and its limitation of work to work for the company. The case of *Deep Rock Oil Co. v. Derouin,* 194 Wis. 369, 216 N. W. 505, wherein the lease involved contained similar provisions, sufficiently meets this contention.

The contracts are also attacked because the company changed the contract rental from a sliding-scale basis to a percentage basis computed on gross price of the completed articles, and permitting the company to charge against the partnership five per cent of the gross price of such articles as were paid for in cash because such reduction to the company's customers was allowed on payment of cash. In answer to this it is only necessary to say that the company alone did not make these changes. The change was made by agreement of the parties. The company proposed; the partners accepted the proposal. The change was fairly and considerately entered into. Even where the strict relation of master and servant exists, the master may propose a wage and the servant may accept. The Fourteenth amendment protects the right of the servant to enter into a contract governing the amount of his compensation and it protects the right of the partners here to enter into a new contract governing their rental basis which affected the amount of their compensation. *Morehead v. N. Y. ex rel. Tipaldo,* 298 U. S. 587, 56 Sup. Ct. 918, 920. The individual partners possessed the constitutional right by contract to change their status from that of mere servants to that of independent contractors.

Contention is also made by respondent that the company's right to terminate the lease for unsatisfactory performance of work is equivalent to the power to discharge the partners for unsatisfactory work and therefore renders them em-

ployees. This is met by *Kneeland-McLurg Lumber Co. v. Industrial Comm.* 196 Wis. 402, 220 N. W. 199, wherein the distinction between right to summary discharge and right to terminate a contract for unsatisfactory performance is pointed out. This provision is particularly attacked because it is claimed the company might terminate the contract if "dissatisfied for any reason." The full provision respecting dissatisfaction is "if, for any reason, the corporation shall become dissatisfied with the manner in which the terms of this lease and agreement are being carried out." Provisions in contracts that work shall be done to the satisfaction of the party for whom it is being performed are permissible. *Keachie v. Starkweather D. Dist.* 168 Wis. 298, 170 N. W. 236. Contracts so providing are not terminable at the mere will of the party to whom the provision is given, but only on the exercise of an honest judgment as to nonperformance. The other party is protected against arbitrary or capricious action. Even a provision in a lease for a term but with a right to the lessor to terminate it at will is not void. Circumstances may exist that justify equity in refusing to enforce specific performance of it, but the mere fact that one party is given the right to terminate at will while the other is not, is not alone ground for refusing relief even in equity. *Cities Service Oil Co. v. Kuckuck,* 221 Wis. 633, 267 N. W. 322.

Respondent contends that under the rules for determining whether one is an employee or an independent contractor plaintiff is an employee because the company retained the right of supervision of work and control of the workmen to the same extent that it exercised them under the previous arrangement. We consider that this contention is not tenable. The four partners themselves controlled their hours of work. They made no deductions against each other for time off or the like. The work was sufficiently laid out by the work orders. The partners were all skilled workmen and required no further directions. It is true that the company

manager had the right to see that the work conformed to the order, and that he at times consulted with the plaintiff as shop foreman respecting procuring the end result, but any employer of an independent contractor has that right. *Medford L. Co. v. Industrial Comm.* 197 Wis. 35, 221 N. W. 390. Many cases have been before the court in which the distinction between an independent contractor and an employee is pointed out. The latest case treating the matter is *Kolman v. Industrial Comm.* 219 Wis. 139, 262 N. W. 622. There is no need to discuss the matter further. We consider that the partnership was an independent contractor within the rule of that case and the cases cited therein.

We believe the above sufficiently covers the contentions of the respondent in support of the judgment of the circuit court. From what is said it follows that the judgment of the court must be reversed, with directions to confirm the order of the Industrial Commission denying compensation. There is no need to discuss the contention of respondent that plaintiff had sustained a compensable injury at the time he quit work.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment confirming the order of the Industrial Commission denying the plaintiff's application for compensation.

FAIRCHILD, J. (*dissenting*). I do not agree that respondent York was, in any sense of the word, an independent contractor in his relation with appellant Schlimgen Memorials, Inc.

Contracts for personal services with reference to the application of the Workmen's Compensation Act are, (1) contracts of hire, where the party rendering the service is the employee of the other party; (2) where contracts for personal services are of such character that the party rendering the service stands in relation to the other party only as an independent contractor.

Where, dealing at arm's length, the first party, having work to be done, and interested only in the result, makes an agreement with the second who, under the agreement, has such control over matters concerning the doing of the work as to be independent in all things and responsible to the first party only for the finished results, no objection can be urged against considering the party rendering the service as an independent contractor. But the principal test is whether the party to whom the service is to be rendered has the right of general control. In Honnold, Workmen's Compensation, § 66, it is said:

"When the doing of the specific work is intrusted to one who exercises an independent employment, and selects his own help, and has the immediate control of them, and the right to control the method of conducting the work, the contractor is an independent contractor."

The test of whether a party contracting to render services is within the definition of "employee," sec. 102.07 (4), Stats., is objective. The terminology or the form of the contract used is of minor importance. A contract which is fundamentally a contract of hire when judged by the actual relationship of control which is set up, is still a contract of hire even though the parties are referred to as "independent contractors," and though the person rendering the service agrees to assume the risk of injury in the course of his employment.

To say to a former employee, "I cannot carry on my business unless you will relieve me of the burden of compensation insurance fixed upon me by law; but if you will call yourself an independent contractor, we will meet the situation together; I can then carry on as before and you can have your job as before," may have considerable appeal as a practical matter, but it does not change the law as enacted by the legislature. The employee is not an independent contractor when control is so planned and adjusted that his efforts as well as final results in the work are regulated by the one for

whom the work is done, especially when accompanied by provisions negativing in every way the suggestion of independence and the right to conduct a separate business for profit. Whatever form may be assumed or name adopted, if the control of the work, as well as the control of the end results, and the risk of loss or chance of gain from the business, are in the person for whom the services are to be performed, and if the person performing the services does not have independence of action as to matters other than end results, then the relationship is that of employer and employee.

Considering the articles of partnership and the lease together, what is the actual relationship of York and the other workmen to the Memorials Company, judged by the standards of control, bearing of the risk of profit and loss, and independence of action?

The company retained control of the amount of work to be done. It had the right to terminate the arrangement on five days' notice. A disagreement between the company and Dieke, one of the so-called partners, resulted in a new partnership agreement among the remaining three workmen. At the time, Mr. Schlimgen called York into his office and told him of a dispute. York testified that Mr. Schlimgen said: "Should I let him go now, or do you think you need him until Memorial Day?" and further, "I said, 'I feel like we should have him here until after Memorial Day providing you are going to let him go.' 'Well,' he says, 'it is up to you. If you want him to stay on until after Memorial Day, you need his work, I will let him stay, but then,' he says, 'he is going. He can't be here any longer. He has been asking for this for a long time.'" The partnership was not permitted to do work for others than the company; it might hire no outside help.

A system of compensation whereby the partners would receive approximately what they had received as employees was arranged by the articles of partnership and the lease agree-

ment. There was fixed a rental of $225 per month to be paid by the partnership to the company for the use of the company's plant, tools, and equipment, which the partnership was required to use. The appellant was to be the sole distributing and sales agent of the partnership, and the appellant agreed to purchase manufactured articles from the partnership and pay the sum of $8,000 to it in excess of the cost price of materials used, plus freight thereon. Deducting the rental from the $8,000 leaves $5,300 to be divided among the four partners after the power bill and certain other charges were paid. This sum, roughly estimated, left about enough to equal the pay roll of the appellant to the former employees when operating this branch of its business prior to the agreement under consideration. During the year prior to the beginning of the partnership arrangement, York received a maximum of $48 per week when working forty-eight hours per week at $1 per hour. Under the partnership arrangement and on the basis of an $8,000 volume of business, York's weekly compensation would be $45.60, subject to deduction for his share of expenses of power, light, water, heat, etc. It was also provided in this instrument that in the event that the manufactured articles purchased varied as to the amount, then the rentals of the property were to be adjusted by a scale arranged in a schedule attached to the lease, and each month was to be treated separately with the understanding that the basis of the rent paid "is the total volume of business done in the particular month; but in any event the partnership is to pay a minimum of $112.50 per month." The scale provided that if the volume per month were $500, the rent would be $112.50; if $625, $141; if $750, $225; and so on up to a monthly volume of $2,000, where the rent would be $450. The agreement was that the control of the volume of the work to be given the partnership and the price to be paid for it "within a reasonable range below the market price at which such articles can be purchased elsewhere" was to be in the appellant.

A partnership is an association of two or more persons to carry on as co-owners a business for profit. Has such an association been created here? The control of the work, the duration, and the membership of the partnership is literally, impliedly, and actually given to an outside individual, the appellant company. Does this association carry on a business for profit? The majority opinion states that this "partnership" is a true partnership because, under the agreement, losses are to be shared by the partners. Nominally this may be true, but there has been framed by the agreement a situation where the possibility of losses to be shared is virtually eliminated, because a "business" in the ordinary sense of the term is not being carried on. The rewards to be received by the so-called partners are roughly the same as under the contract of employment, previously in force. Books were kept under the so-called partnership, undoubtedly as shop records had been kept before. The amount of work to be done over a long period will be determined by the company. The equipment used and leased is controlled by the company. Materials will be purchased by the company. The only costs to be paid directly by the partnership are those for light, heat, and power, which must have been relatively constant. Every element of risk of loss or possibility of gain is upon the company; none is on the so-called partnership.

A serious problem evidently confronted appellant and its four employees. They tried to create a partnership so as to develop a situation where an independent contractor relationship might exist, so that the company might be free from the necessity of carrying compensation insurance. But keeping control in the company in the interest of maintaining efficiency is not consistent with the creation of an independent contractor relationship. It was the effort to keep control in the company that caused limitations to be imposed by the agreement to such an extent that they prevented the partnership from coming into being. The so-called partnership was so limited as to deprive it of certain essential faculties, and it

was so definitely connected with appellant's business as to leave no other conclusion than that it was still appellant's business and under its control. The control was exercised just as effectively as before for appellant's own peculiar purpose and for the sole and peculiar benefit of its business. It seems clear to me that it was not the intention of the parties to establish a new, free, complete, independent business entity, and to set it in motion in the business world as such. Many cases might be cited in support of the proposition that the veil used to cloak a transaction or the style or title applied does not completely conceal its substance, and that it is the substance of the matter that gives the true character. *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 237 N. W. 117; *Ford Hydro-Electric Co. v. Aurora,* 206 Wis. 489, 240 N. W. 418; *Utility Coal Co. v. Rogez,* 170 Okla. 264, 39 Pac. (2d) 60; *People v. Levine,* 160 Misc. 181, 288 N. Y. Supp. 476.

The majority opinion cites *Jenkins v. Moyse,* 254 N. Y. 319, 172 N. E. 521, and suggests an analogy between the situation in this case and the situation where a borrower, by arrangement with the lender, incorporated his business and borrowed the money in the corporate name to evade the usury statute of New York. The two situations are markedly dissimilar. In the New York case, the borrower organized a corporation in fact as well as in name. Here the new entity was purely nominal.

In *Kneeland-McLurg Lumber Co. v. Industrial Comm.* 196 Wis. 402, 220 N. W. 199, the lumber company contracted with several men to construct a railroad grade and right of way. The men agreed to furnish all tools, dynamite, and other necessary supplies. The amount of payment was proportional to the number of feet of right of way constructed. The case is readily distinguishable from the case in hand. There the contract was for a particular piece of work; the men were paid at a flat rate for work accomplished. In the present case, the contract calls for work over a period of time at a number of jobs, specifications for which are to be

made known later; the company will pay the cost of materials. The company will be the sole agent to handle all work done. In the *Lumber Co. Case,* so long as the work was done by the time specified, there was nothing to prevent the same partnership from using the same equipment to do construction work for other parties.

In *Badger Furniture Co. v. Industrial Comm.* 200 Wis. 127, 227 N. W. 288, the points of distinction are even more obvious. In that case the alleged employee was a salesman for the Badger Furniture Company. His compensation was on a commission basis; he received no return for his expenses and had no drawing account. He handled other lines of goods; he was uncontrolled as to his movements about his territory, which was nearly the whole state. He was an independent contractor.

The case of *Deep Rock Oil Co. v. Derouin,* 194 Wis. 369, 216 N. W. 505, cited by the majority, does not apply here. In that case the lessee of premises for the purpose of selling the lessor's products solely was not restricted by the contract as to the volume of sales he might make nor the hiring of his help. This court held that agreement, in so far as it created a relation other than that of lessor and lessee, an executory sales contract.

This dissent is based upon my interpretation of the state of facts and the law applicable thereto. The majority view the matter differently. But the assumption of risk by the workman is so definitely inconsistent with the philosophy of workman's compensation liability that unless a thoroughly genuine independent contractor relationship is shown to exist, all matters should be resolved against such a claim as is here made. For these reasons, I am impelled to record this dissent.

I am authorized to state that Mr. Justice MARTIN concurs in this dissent.

WICKHEM, J., took no part.