WISCONSIN BRIDGE & IRON COMPANY, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents. [Three cases.]

*November 6, 1939—February 13, 1940.*

468

For the appellant there were briefs by *Wright & Mayer* of Milwaukee, and oral argument by *Fred R. Wright*.

For the respondent Industrial Commission there were briefs by *Stanley Rector* and *Arthur Barber,* both of Madison, and oral argument by *Mr. Rector*.

Briefs *amici curiæ* were filed by *Roberts, Roe & Boardman,* and by *Olin & Butler,* all of Madison.

FOWLER, J. Three cases are involved wherein, under the Wisconsin Unemployment Compensation Act, unemployment compensation is claimed from the unemployment fund of the Wisconsin Bridge & Iron Company by workers on certain separate construction jobs contracted by the Bridge Company to be furnished and constructed for the Consolidated Water Power & Paper Company at Wisconsin Rapids. The Bridge Company (hereinafter referred to as the "company") contends that it is not the employer of the claimants and is therefore not liable under the act. Action was brought in the circuit court for Dane county by the company to review the award of the Industrial Commission which held the company liable. The circuit court affirmed the decision of the commission. The company appeals.

Under the Unemployment Compensation Act employers are required to contribute two per cent of their pay rolls, sec. 108.18 (5), Stats. 1937, into a fund paid to and administered by the Industrial Commission, sec. 108.14. Claims for benefits when allowed are paid by the state out of the fund accumulated in the employer's account. Sec. 108.03.

When a claim is made, a deputy designated by the commission first determines whether the claim is valid and its amount if valid. Sec. 108.09 (2). From this determination an appeal lies to such appeal tribunal as the commission designates, or to the commission itself. Sec. 108.09 (3). The appeal tribunal consists of an examiner, or a commissioner; or it may consist of one of these, who is chairman, and of two other members appointed by the commission, an employer representative and an employee representative. Sec. 108.09 (4). The determination of the appeal tribunal is reviewed on demand by the commission. Sec. 108.09 (6) (b). Action may be brought as in industrial commission compensation cases to review the determination of the commission. Sec. 108.09 (7). The instant case went the course of determination by a deputy, determination by an appeal board consisting of an examiner, a representative of the employer, and a representative of the employee, review of their determination by the commission, and action to review the commission's determination.

The claimants were employed in erecting materials and parts fabricated by the company into certain structures that the company had contracted to construct and install for the paper company. Their work was done under the immediate supervision of one Drews for the greater part of the construction work, and later under the immediate supervision of one Michaelis, both of whom had previously been in the employ of the company as superintendents of construction work done directly by the company. It is claimed by the respondents that the company was itself doing the construction work upon which the claimants were engaged, and that both Drews and Michaelis were in the employment of the company in the instant jobs acting as superintendents or foremen of and for the company. It is contended by the company that Drews was an independent contractor to whom the company had let the construction work involved, and that Michaelis, after Drews left the job, was acting not for

the company but for Drews as the latter's superintendent or foreman. There is no question that the claimants are within ch. 108, Stats. 1937, either as employees of the company or of Drews.

It is undisputed that the company in form let the work of construction to Drews, and that the form of the contract with him in all respects conformed to the contract regularly and customarily used by the company in subletting construction work. It is also without dispute that Drews hired the claimants and all other workmen on the construction jobs; that the claimants were paid by checks drawn by Drews; that Drews listed himself with the Industrial Commission as an employer under the act and set up and paid to the commission the reserves required from employers by the act; that Drews as such employer procured compensation insurance for the protection of his employees and paid the premiums therefor; and that the claimants had no contact whatsoever with the company and no contract of service or hire except their contract with Drews. Drews was paid nothing by the company for his connection with the job except the contract price fixed by his contracts with the company and the company exercised no control whatever over the workmen on the construction jobs, and no control over Drews except such as was indirectly involved in seeing that he properly fulfilled his contract for construction and completed the work according to the specifications of the contracts, to which kind of control an independent contractor is always subject. None of the work covered by Drews' contracts was performed on premises of the company.

Drews had prior to entering into the contract for construction been regularly in the employment of the company. After letting to him the instant contract, the company let to him four other contracts for construction of works elsewhere. When the work on the instant job had progressed so that Drews' presence on the job was not required, a superintendent who had been an employee of the company was put in

charge. This superintendent was not paid by the company, and must therefore have been paid by Drews. Drews then entered the employment of the company engaged in work having no connection with the instant contract or his other construction contracts above mentioned. Drews had not been in business as a contractor prior to entering into the instant construction contract, and had theretofore generally been in the employ of the company, but had been at times employed by others also.

Before the contract with Drews for the instant construction was made the company was about to proceed with the work of construction itself and applied to the business agent of the Iron Workers' Union of Milwaukee to furnish men for the construction job. The agent refused to furnish men to the company because the company had refused to enter into a closed-shop agreement, but told the company's representative that he would furnish men to Drews if Drews took the job under an "under-cover" arrangement. The agent made the suggestion for such an arrangement. Following this suggestion the subcontracts were let to Drews and the agent of the union sent the claimants and other workmen to Drews who hired them, and paid them with his own checks.

The findings of the commission, after reciting as fact that Drews and the supervisor who replaced him on the work at Wisconsin Rapids were both supervisors of the company, both competent so that no supervision of them was required by the company, and that the company furnished all the equipment, tools, and machinery used on the jobs, go on to say that various "labor purchase orders" were issued by the company. These so-called labor purchase orders were by their terms actually contracts by which the company agreed to pay Drews a stated sum for doing the construction work involved in the several jobs and furnishing the labor and supervision required therefor. The form used was the same as was customarily used by the company in other construc-

tion contracts let to subcontractors. Their nature and effect cannot be camouflaged by designating them as labor purchase contracts or anything else. They were contracts for construction at a stated price, no matter what they be called. It is true that the purpose of letting the contracts to Drews was to overcome the compunctions of the union's agent about furnishing union labor to perform a contract of a company who would not enter into a closed-shop agreement with the American Federation of Labor, and thus procure union labor for performing the work of construction, but the reason back of the letting does not affect the validity of the contracts with Drews. That proposition is sufficiently covered by *York v. Industrial Comm.* 223 Wis. 140, 269 N. W. 726. The conclusion of the *York Case* on that point more clearly follows here than there, because in that case the contract involved was entered into to avoid the application of the Workmen's Compensation Act. The purpose of the instant contract was not to avoid application of the Unemployment Compensation Act. It was merely as above stated. There was nothing wrong, there was no deception in that. The course taken was taken at the suggestion of the agent of the union for the purpose of putting to work the claimants and other members of the union furnished by him. The agent did not suggest the plan for the purpose of aiding the company. He suggested it with view of aiding the workers he furnished. That it also indirectly aided the company in the performance of its contract with the paper company was merely an incidental result of the plan. The purpose might as well have been achieved by letting the contracts to a corporate subcontractor or an individual subcontractor who had never had any connection with the company.

It is said in the findings of the commission that the amount paid Drews was in excess of the aggregate of the work contracts. The facts in this regard are undisputed. Drews called for money as he wanted it, presumably so he could

meet his pay rolls. The aggregate of the contract prices was $27,945; the aggregate payments were $27,977. The difference between these totals is $32. The discrepancy is not explained. The secretary of the company could not explain it. But it is so small as manifestly to be immaterial in drawing inferences as to whether Drews was an independent contractor or an employee of the company.

It must of course be determined whether Drews was an independent subcontractor or an employee, because it is only through his status as an employee being determined that the claimants can be held to have been employees of the company. To render the claimants employees of the company Drews must have been an employee of the company in the sense that he was hiring the claimants for and in behalf of the company as its agent. But that status is not to be determined from the language of the Unemployment Compensation Act. It must be determined as such status is determined at common law or under the Workmen's Compensation Act. The status is determined by the same consideration under the Workmen's Compensation Act as under the common law. Statutes are not to be construed as changing the common law unless the purpose to effect such change is clearly expressed therein. To have such effect "the language [of the statute] must be clear, unambiguous and peremptory." *Meek v. Pierce,* 19 Wis. *300, *303. That rule has been consistently adhered to ever since it was so stated in the case cited. See 5 Callaghan's Wis. Dig. p. 1887; 1934 Suppl. p. 844; *Brown v. Loewenbach,* 217 Wis. 379, 258 N. W. 379. There is no language in sec. 108.02, Stats. 1937, or elsewhere in the act in which the section is incorporated to indicate a purpose or intent to make the status, as subcontractor or employee, of a person who (Drews) hires employees to do work in performance of a contract of an independent contractor (company) dependent on the definition of an employee under sec. 108.02 or dependent on any other considerations than

those that determined such status of such person at common law.

It is claimed by the respondents, and the appeal and review tribunals all considered, that under secs. 108.02 (3) and 108.02 (5), Stats. 1937, Drews was in the employment of the company and therefore employed the claimants as its agent and the claimants thereby became employees of the company.

Sec. 108.02 (3), Stats. 1937, reads:

" 'Employe' means any individual employed by an 'employer' and in an 'employment' both subject to this chapter."

Sec. 108.02 (5) (a), Stats. 1937, provides that:

" 'Employment' . . . means any service performed by an *individual* for pay, . . . under any contract of *service* for pay or contract of hire, . . . whether *such individual's* contract was directly made with and paid by the employer or through a person in his employ, . . . and *each individual* thus engaged . . . to perform services for pay shall . . . be treated as in an 'employment,' unless and until the employer has satisfied the commission . . ."

of three things. These things as applied to the instant case are:

(1) That such individual (claimant) was free from the company's control or direction over the performance of his (such individual's) contract of service; and (2) that such (individual's) work was performed outside of all the employer's (company's) places of business; and that (3) *such individual* was customarily engaged in an independently established trade, business, or occupation.

The appeal and reviewing tribunals, to bring the claimants within the act, considered Drews an employee of the company and determined his status as such employee by considering whether he fell within the description of the statute above stated. That the appeal tribunal and the tribunals reviewing its decisions so based their conclusion as to Drews' status

appears from the following statements in the findings of the tribunal, which are restated verbatim in the Industrial Commission's findings and confirmed by the circuit court. The findings state that: "The only question involved is whether the claimant was employed by the superintendent [Drews] as an independent employer or by the superintendent [Drews] as an employee of the employer [the company]." After so stating, the findings refer to sec. 108.02 (5) (a), Stats. 1937, and state that it "creates a presumption that any individual [Drews] who performs services for pay under any contract of hire is in 'employment.' The superintendent [Drews] was performing services for pay under a contract of service made directly with the employer [company]. The statutory presumption that he [Drews] was an employee is therefore created."

But the "such individual" covered by said paragraph (3) above numbered is the person who is seeking recovery under the act. It is the one who is seeking recovery under the act, not Drews, in whose favor the statute creates a presumption that any individual who performs services for pay under any contract of hire is in an employment. The clause cannot have been intended as covering a subcontractor, as Drews was if the so-called work orders constituted a contract, for a corporation may be a subcontractor and only "individuals" are covered by sub. (5) (a) of sec. 108.02, Stats. 1937. The statute merely describes those who are seeking compensation. They are the *individuals* who are covered by sub. (5) (a); they are the "such individuals" referred to in and covered by the paragraph designated (3) in the above statement of the statute. This follows from sec. 108.02 (4) (a) which defines employer. Par. (a) declares that—

"'Employer' . . . means any person . . . who is subject to this chapter under the statutes of 1935, or who becomes subject hereto under the provisions of this section."

Then follow pars. (b), (c), and (d) which cover "any other employer," that is any employer not covered by par. (a)

who falls under any one of three separate classes of coverage described in those paragraphs. Therefore in determining whether Drews was an employer of the applicants we must look to the statutes of 1935. Sec. 108.02 (d), Stats. 1935, included as an employer all persons who within the calendar year employed ten or more persons for eighteen or more weeks. Drews so did. By par. (d) the company would be the employer of the instant applicants "unless the contractor or subcontractor [Drews] is himself an 'employer' subject to this chapter." But Drews was so subject, if he was a subcontractor of the company. Therefore Drews, not the company, was the employer of the applicants.

The same conclusion follows if we determine the status of Drews from the meaning of the word "employee." Sec. 108.02 (3), Stats. 1937, as above stated, declares:

" 'Employee' means any individual employed by an 'employer' and in an 'employment' both subject to this chapter."

That implies that in order to be an employee an individual, (1) must be employed, (2) by an employer, and (3) in an employment. This implies that the words "employer" and "employee" in sub. (3) are to be given their common-law meaning. "Employer" is defined in sec. 108.02 (4) (a), Stats. 1937, and there is nothing in the definition there given to indicate anything different from the common-law concept. Under that concept Drews, not the company, was the employer of the instant applicants, if the so-called work orders constituted a contract.

Par. (a) of sub. (5), sec. 108.02, Stats. 1937, defines "employment." It is urged that in defining the kind of service that is involved in employment this paragraph makes every individual who performs service for pay under a contract of service for pay an employee. This cannot be. This would render of no consequence the provision of sub. (3) that an "employee" is "any individual employed by an 'employer' and in an 'employment' both subject to this chapter." That concept is inconsistent with the alternative provision of

par. (a) of sub. (5) that the contract of service must either be directly with the employer or "through a person in his employ, provided the employer had actual or constructive knowledge of such contract." This only means as applied to the instant case that the applicants, to be employees of the company, must have been employed by the company directly or by Drews acting as the company's agent, and that the company must have had actual or constructive knowledge of Drews' employing them.

It would seem that if the legislature in enacting sec. 108.02, Stats. 1937, had intended to change the ordinary and commonly understood meaning of the words "employer" and "employee" they would have used language expressly so declaring. By sec. 370.01 (1), Stats., words in statutes are to be "construed and understood according to the common and approved usage of the language." The legislature had no difficulty in saying when sec. 108.02 (c) of the Unemployment Compensation Act was first enacted by ch. 20, Laws of Sp. Sess. 1931–32, that employees of subcontractors were under the act employees of the principal contractor. That provision was taken out by sec. 1, ch. 383, Laws of 1933, see sec. 108.02 (c), Stats. 1933, and it has never been put back by any language of any later statute. If the legislature had intended to put back that provision, the way to do it manifestly was to say so, and presumably they would have so said had they so intended.

It also appears that the appeal tribunal considered that the arrangement under which Drews acted was a "subterfuge" and Drews was therefore an employee of the company. Whether this is correct depends on the meaning that was attributed by the tribunal to the word "subterfuge." If the word was contemplated by the tribunal as meaning that if in fact the contract seemingly made by the work orders between Drews and the company was not carried out, but the company in fact paid the laborers, insurance premium, unemploy-

ment benefit contributions, clerks, and all expenses incident to the construction involved under the company's contract with the paper company, and merely paid Drews for his superintendence the amount he regularly received as wage or salary as supervisor of construction for the company, the appeal tribunal's idea would be correct, if the evidence fairly considered and reasonably evaluated failed to satisfy the tribunal that the situation was not as above stated. But to make that idea correct there must have been substantial and reasonable basis in the evidence for the tribunal's holding that they were not satisfied that Drews was a subcontractor, and therefore was an employee. However, if the tribunal meant by the word "subterfuge" that the arrangement with Drews although carried out was entered into in order to procure union labor which would not otherwise have been provided the tribunal was in error. As above stated, the purpose of entering into the arrangement, if the arrangement was carried out according to the terms of the so-called work orders which apparently constitute Drews an independent subcontractor, is entirely immaterial. *York v. Industrial Comm., supra,* settles that. We infer from the record that the tribunal attributed to the word "subterfuge" the meaning last above stated. There is much in the record that so indicates.

We call attention to another erroneous idea of the appeal tribunal that may have in some degree influenced their decision. It was stated early in the hearing before the tribunal, by Mr. Alexander, the chairman of the tribunal, that:

"The Unemployment Compensation Act does not exclude *independent contractors.* Roughly speaking, first, the employer [company] must show that the employee [independent contractor Drews] was free from his [company's] control and direction, *both under his* [Drews'] *contract and in fact;* two, either that the employee [independent contractor Drews] was engaged outside of the usual course of the employer's [company's] enterprise or outside of all the employ-

er's [company's] places of business; and three, that the individual [independent contractor Drews] was customarily engaged in an independently established trade, business, profession or occupation."

That this was an erroneous conception is apparent on the face of it. Manifestly if Drews was an independent contractor he was free from the company's control. He could not be subject to the company's control and still be an independent contractor.

In view of the error of the appeal tribunal in basing their determination of Drews' status as an employee on subs. (3) and (5) (a) of sec. 108.02, Stats. 1937; the meaning apparently attributed by them to the word "subterfuge" in their decision; and their misconception that Drews might have been a subcontractor of the company and still have been its employee, we conclude that the judgment of the circuit court should be reversed with directions to the circuit court to vacate the award of the Industrial Commission and direct the commission to remand the cases to the appeal tribunal for retrial. Upon the retrial the evidence of Drews, Michaelis, and Christnelli, or whoever negotiated the work orders with Drews, should be produced, either by deposition or as witnesses before the tribunal. All the employees of the company have an interest in its unemployment benefit fund. As unemployment compensation is payable out of and limited by the amount of the fund contributed by the particular employer of whom the applicant for compensation is an employee, it is as important for the appeal tribunal to see that the fund contributed by an employer is kept intact for the benefit of the employer's employees as that an applicant may receive the compensation to which he is entitled. The fund should not be depleted by payment to employees of independent subcontractors of the employer to the end that the employer's own employees may not through such depletion be deprived of the full compensation which the employer's fund

will yield them. There is no question that the instant applicants are entitled to compensation either out of the fund contributed by Drews, or from the fund contributed by the company enhanced by the contributions paid by Drews and credited to him by the commission. Their claim against the company's fund is manifestly made because that fund will pay them in full, while the fund contributed by and credited to Drews will not.

Many questions relating to status as independent contractor or employee are discussed in the briefs which we consider should not be decided until they arise in a case of an applicant for unemployment benefits, and we do not here pass upon them.

*By the Court.*—The judgments of the circuit court are reversed, and the causes remanded for further proceedings in accordance with the opinion.

WICKHEM, J., concurs in the result.

ROSENBERRY, C. J. (*dissenting*). I am unable to agree with the construction placed upon certain provisions of ch. 108, Stats. 1937, by the court, and shall state the reasons for my disagreement.

The statement of facts made in the opinion of the court is referred to and made a part of this dissenting opinion and will not be repeated here.

In my opinion the controversy is to be determined by the provisions of ch. 108, Stats. 1937. Ch. 343, Laws of 1937, was published July 3, 1937, and became effective as of that day. Drews never had an employee before July 1, 1937. For that reason ch. 108, Stats. 1935, could not have applied to him.

The question is, How shall the provisions of sec. 108.02, (3), (4), and (5), Stats. 1937, be interpreted? In the opinion of the court it is held that the statutory definitions contained in the chapter do not apply in determining whether

Drews was an employee of the plaintiff company. A determination of that question becomes material because if the claimants were hired by Drews, an employee, they are entitled to compensation under the act. If they were hired by Drews as an employee and the plaintiff has offered evidence which should satisfy the commission that Drews has been and will continue to be free from the employer's control or direction over the performance of his work both under his contract of service and in fact and that such work is either outside the usual course of the employer's enterprise or performed outside of all the employer's places of business and that Drews is customarily engaged in an independent business or occupation, then the claimants will not be entitled to compensation under the act as plaintiff's employees. No one contends that the claimants were independent contractors.

Ch. 108, Stats., was created by ch. 20, Laws of Sp. Sess. 1931–32, and has been amended from time to time. The terms "employee," "employer," and "employment" have been redefined from time to time. In the 1937 statutes they were defined as follows:

Sec. 108.02 (3), Stats., was amended to read as follows:

" 'Employe' means any individual employed by an 'employer' and in an 'employment' both subject to this chapter."

Sec. 108.02 (d), Stats., was renumbered and appears as sec. 108.02 (4), which is as follows:

"(a) 'Employer,' except where the term by its context clearly applies to each employer of one or more individuals in Wisconsin, means any person, . . . including this state and any municipal corporation or other political subdivision thereof, and any fraternal benefit society as defined in section 208.01, who is subject to this chapter under the statutes of 1935, or who becomes subject hereto under the provisions of this section. . . ."

Sec. 108.02 (5), Stats., was amended to read as follows:

"(a) 'Employment,' subject to the other provisions of this subsection, means any service performed by an individual for

pay, including service in interstate commerce, under any contract of service for pay or contract of hire, written or oral, express or implied, whether such individual's contract was directly made with and paid by the employer or through a person in his employ, provided the employer had actual or constructive knowledge of such contract; and each individual thus engaged by any employer to perform services for pay shall for the purposes of this chapter be treated as in an 'employment,' unless and until the employer has satisfied the commission that such individual has been and will continue to be free from the employer's control or direction over the performance of his work both under his contract of service and in fact, and that such work is either outside the usual course of the employer's enterprise or performed outside of all the employer's places of business, and that such individual is customarily engaged in an independently established trade, business, profession or occupation. . . ." (Exceptions.)

Sec. 108.02, Stats., specifically provides that the terms "employee," "employer," and "employment," as used in the chapter mean the things stated in the definitions. The difficulties of construction arise very largely from the fact that the terms "employee," "employer," and "employment" are defined almost entirely in terms of the other two. These terms being cognates, the result is that in practical effect the term defined is partially used in the definition and one must consider the three "definitions" as found in each of the several acts together in order to arrive at the meaning of any one of them. The act contains in sec. 108.01 an extensive declaration of the public policy to be achieved by the creation of the chapter. From 1931 on, it has been the evident purpose of the legislature to make the act apply to as large a unit of employees as was consistent with the other provisions of the act. Thus, in 1931 it provided that an independent contractor shall be an employer, but that all persons employed under him by subcontractors shall be deemed to be his employees for the purposes of the chapter.

In 1933, it was provided that all persons employed by a contractor or subcontractor under an "employer" subject to

this chapter shall be deemed the employer's employees under the conditions there stated.

In 1935, it was provided that in determining whether an employer employs enough persons to be an "employer" he shall whenever he contracts with or has under him any contractor or subcontractor be deemed to employ all such persons and he alone is made liable for contributions.

And in 1935, in sec. 108.02 (c), Stats., it was expressly provided that all persons employed by a contractor or subcontractor under an employer shall be deemed the employer's employees unless the contractor or subcontractor was himself an employer subject to the chapter.

There is no doubt that the claimants (defendants) in these cases were employees. The question is, Were they employees of Drews or employees of the plaintiff? If they were free from the control or direction of the plaintiff, and if the work they performed was outside of the usual course of the plaintiff's business, etc., and if they were customarily engaged in an independently established trade, business, or occupation as the court holds, it was solely because they were the employees of Drews. It is clear that they were engaged in performing a service which the plaintiff was under a contract duty to perform. "Any service performed by an individual for pay, under a contract of hire" is a very broad and comprehensive classification. It includes service performed by an employee, by a subcontractor, a contractor, and an independent contractor. According to the construction placed upon the statute by the court these three conditions apply only to claimants. In my opinion they apply to everyone performing service under a contract. Let us suppose Drews were also making a claim under the act. Would his status as claimant be determined under the provisions of the act? Clearly so. The plaintiff is concededly an "employer." Drews is under an express contract to perform services for the plaintiff. He is therefore in an "employment" unless the

plaintiff satisfies the commission with respect to the three conditions. The court says it is a question for the commission to determine the facts. It would seem clear under the law that it is the duty of the commission to determine those facts in accordance with the statutory definitions. If the commission finds that the plaintiff (employer) has not established the three conditions, we are left with the absurd result that Drews is a "person in the employ" of the plaintiff for all purposes except that when he hires men to do work which the plaintiff has contracted to do he is a contractor and not a "person in the employ" of plaintiff.

If the plaintiff in these cases had satisfied the commission that Drews was free from the plaintiff's control and direction, etc., the commission would then have been satisfied that claimants were free from the plaintiff's control and direction because they would then be employees of a person who was free from the plaintiff's control and direction.

So in my view of the cases it becomes necessary to determine the status of Drews, the status of the three claimants being dependent upon his status. If Drews was a person in the employ of the plaintiff, and nothing else, then under the statute the claimants were clearly in an "employment" of the plaintiff. The language "each individual thus engaged by any employer to perform services," etc., is clearly applicable to Drews because the plaintiff made a contract directly with Drews to perform services. The statute says that Drews is to be treated as in an "employment" unless and until the employer has satisfied the commission with reference to the three things specified. When Drews' status is established, the status of the persons working under him is likewise established. The only difference between Drews and the claimants is that Drews' contract was made directly with the plaintiff, while the contract of the claimants was made through another. Each of them is an "individual thus engaged by" an "employer" to perform services.

If the statute is not to be applied to a person in the situation that Drews was in under the facts of these cases, then it seems to me it can never have any application for the reason that the status of a person employed under a contract such as that made by Drews with claimants is, the court holds, to be determined in accordance with the rules of the common law and not according to the statute. Under the rules of the common law he is a subcontractor and claimants are out. The three conditions apply to no one. In my judgment it was the legislative intention to rearrange, reclassify, and redefine the common-law relationships of employee, employer, and employment for the express purpose of making the chapter applicable to as large a unit as was consistent with the purposes of the act. All persons performing services under a contract for an employer were to be considered employees if they were in an "employment." All such persons are in an employment unless the employer, in these cases the plaintiff, satisfies the commission of the three things specified in the statute. The plaintiff in these cases not having satisfied the commission that Drews was free from control, etc., Drews was an employee and clearly a person in the employ of the plaintiff, and the claimants were employees.

Whether the plaintiff in this case satisfied the commission with respect to these three matters presents a question of fact. Upon this branch of the case the commission found:

"The superintendent [Drews] was performing services for pay under a contract of service made directly with the employer. The statutory presumption that he was an employee is therefore created. The employer has failed to satisfy the commission that the superintendent was. '. . . free from the employer's control or direction over the performance of his work both under his contract of service and in fact, and that such work is either outside the usual course of the employer's enterprise or performed outside of all the employer's places of business, and that such individual

[Drews] is customarily engaged in an independently established trade, business, profession or occupation.' "

For the reasons stated, the commission concluded that the superintendent was an employee as defined by the statute. In my opinion, under all the facts and circumstances of this case, Drews' status was equivocal and the determination of what his status was depended upon inferences of fact to be drawn from the undisputed evidence.

It clearly appears both from the record and the statement of facts contained in the opinion that the service to be rendered by Drews under the contract was one customarily performed by the company itself. The reason it did not perform it in this case was that it could not procure the necessary union labor. As a consequence of that, and at the suggestion of the union authorities, the so-called under-cover contract was entered into.

As appears from the statement of facts, Drews was customarily in the employ of the plaintiff company. Before the work at Wisconsin Rapids was completed he re-entered its employ. From all the evidence offered and received in the case conflicting inferences of fact may be drawn depending upon the view which the trier of the fact takes of the entire situation. Under the well-established law of this state, where different inferences may be drawn from the facts, the inferences drawn by the commission are as conclusive as its so-called findings of fact. *Indrebo v. Industrial Comm.* (1932) 209 Wis. 272, 243 N. W. 464.

The history of the statute as well as the language of the statutes of 1937 convinces me that the legislature of 1937 dropped out references to contractor and subcontractor in the definition of "employee" as found in the statutes of 1935 as well as the clause in the definition of "employer" relating to contractor and subcontractor, and that by so doing, they made the question of who were entitled to benefits under the act depend on whether the persons claiming such benefits

were in an employment and all persons performing service for the employer were deemed to be in that employer's employment unless and until the employer satisfied the commission with reference to the three things specified as already set out. The legislature did not thereby intend to diminish the size of the unit to which the act should be applicable. As now construed, units may be broken up by letting out parts of the work to contractors. In my judgment the legislature intended to enlarge the units. If the employer satisfies the commission with respect to the three things, as to any person under a contract to perform service, that individual becomes an independent contractor of a class less inclusive under the statutory definition than under the common-law definition. The application of the statute creates a restricted class of independent contractors. If a person in the employ of the plaintiff in these cases possesses the three statutory requirements, the statute does not apply, and if he employs individuals they are his employees and not the employees of the person for whom he performs service. That the statutory definitions should be applied in the construction of a statute of which they are a part, see *Rossmiller v. State* (1902), 114 Wis. 169, 89 N. W. 839; *Fox v. Standard Oil Co.* (1935) 294 U. S. 87, 55 Sup. Ct. 333, 79 L. Ed. 780.

In view of the declared policy of the act, and of the uniform intention of the legislature to increase the size of the units to which the act is applicable and the definitions contained in the statute, I am of the opinion that the statute should be applied in determining the status of Drews; that under the statute Drews was a person in the employ of the plaintiff; that the plaintiff did not satisfy the commission with respect to the three things specified; that persons employed by Drews were employees of the plaintiff and therefore qualified claimants, and that the judgment of the circuit court should be affirmed.