ANN WALSH BRADLEY, J.
¶ 61. (dissenting). The Health Care Worker Protection Act protects whistle-blowers who are health care workers and who report unethical or illegal behavior that threatens the health and safety of patients. Masri, a full-time health care worker at the Medical College of Wisconsin (MCW), did everything she was supposed to do under the Act. She reported what she observed as unethical and potentially illegal behavior. There is nothing to suggest that her reporting was anything other than good faith reporting.
¶ 62. She asserts that as a result of her good faith reporting, her internship was terminated, her educa *441 tional career has been disrupted, and she has been stigmatized with a black mark on her professional career. She asks for vindication that what she did was right, and payment of her attorney fees in seeking that vindication.
¶ 63. Even though she did what was asked under the Act, the majority denies her any vindication. It leaves Masri and other health care workers like her without protection and without a remedy. The result is that these health care workers who are in a position to witness and report problems with patient care may now be silent, resulting in lower quality patient care.
¶ 64. This case is about statutory construction. I part ways with the majority because in reaching its conclusion it discards our time-tested canons of statutory construction. In doing so, the majority rewrites the statute, limits application of the Health Care Worker Protection Act beyond what is required by its terms, and undermines the Act's purpose of protecting patients.
¶ 65. Contrary to the majority, I conclude that the Health Care Worker Protection Act means what it expressly provides: its coverage extends to "any person." Further, even if the Act's coverage were limited to employees only, the canons of statutory construction mandate that "employee" be interpreted broadly in order to fulfill the remedial purpose of the Act. Under either approach, Masri should be afforded coverage. Accordingly, I respectfully dissent.
I
¶ 66. The majority downplays certain facts relevant to this case. Because there is more to the story, I begin with an overview of the events preceding this action.
*442 ¶ 67. Masri was a doctoral candidate in the University of Wisconsin-Milwaukee School of Education (UWM), Department of Education Psychology. UWM placed Masri as a full-time intern at MCW as part of her educational program. Prior to the start of her internship, Masri's future supervisor, Dr. Anderson, e-mailed her stating: "I have found some funding for you for a research project. And actually have a commitment. Still working on the amount but think at least 500 per month."
¶ 68. In August 2008 Masri started working as a "Psychologist Intern" in MCW's transplant surgery unit at Froedtert Hospital. She worked 40 regularly scheduled hours per week. Her duties included interviewing patients and staff, reviewing and assessing medical records, signing psychological reports, preparing patient progress notes, and attending staff meetings. As part of her internship, Masri received full access to patient records otherwise protected by HIPAA[1] and the hospital's facilities.
¶ 69. Some ethical concerns arose during Masri's internship and she was directed by MCW staff to report them to John Mayer, the official designated to receive employee complaints. Masri met with Mayer on November 19, 2008, and reported that Dr. Anderson ordered her to create a borderline personality diagnosis to discredit a patient who may have been contemplating a medical malpractice suit. She also reported that she was directed to perform professional duties outside the authorized parameters of her intern position. Specifically, she was ordered to work as a professional social worker *443 —not as a Psychologist Intern — while the transplant unit social worker was away on vacation. She was also directed to complete evaluations in the role of an authorized social worker for patients. Although Masri had more incidents to report,[2] Mayer cut her off, stating that he needed to discuss her allegations with Dr. Anderson. Two days later, Dr. Anderson called UWM from Washington, D.C. to terminate Masri's internship.
¶ 70. Masri filed a complaint with the Equal Rights Division of the Department of Workforce Development (DWD) about the termination of her internship. In response to inquiries from the Equal Rights Division, MCW stated that Masri was not an employee and that her internship was discontinued due to her unsatisfactory performance. In support, MCW attached a letter from Dr. Anderson explaining her decision to terminate Masri's internship. Dr. Anderson's undated letter, which was drafted after Masri's internship was terminated, made reference to incidents in October 2008 and referred to them as being the grounds for the termination. Other than this undated, post-termination letter, there are no other notes in the record about the incidents or any other documentation that would substantiate a concern that Masri's performance was unsatisfactory.
*444 II
¶ 71. The majority determines that the Act's protections apply only to individuals who work in exchange for compensation or tangible benefits. In reaching this determination, the majority fails to follow time-tested canons of statutory construction. Those canons provide that when interpreting a statute, we look first to the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110.
¶ 72. Unlike what the majority suggests, the statute expressly states who is covered — "any person." Specifically, it provides:
No health care facility or health care provider and no employee of a health care facility or health care provider may take disciplinary action against, or threaten to take disciplinary action against, any person because the person reported in good faith any information under sub. (2)(a), in good faith initiated, participated in or testified in any action or proceeding under sub. (2)(c) or provided in good faith any information under sub. (2)(d) or because the health care facility, health care provider or employee believes that the person reported in good faith any information under sub. (2) (a), in good faith initiated, participated in or testified in any action or proceeding under sub. (2) (c) or provided in good faith any information under sub. (2)(d).
Wis. Stat. § 146.997(3)(a) (emphasis supplied).
¶ 73. The majority, however, inserts its own word "employee" for the legislature's chosen words "any person." In doing so, it violates a cardinal canon of statutory construction. Rather than adhering to the express language chosen by the legislature, it discards it.
¶ 74. The majority attempts to justify its rewriting of the express language of the Health Care Worker *445 Protection Act by implying that it was inartfully drafted. It offers the excuse that the legislature used the words "any person" to differentiate between the employee retaliating and the employee being retaliated against in order to allay confusion. Majority op., ¶ 45.
¶ 75. This excuse is without merit. If the legislature had intended for the statute to apply only to employees, it could have easily cured the suggested confusion. It takes this writer mere seconds to provide an example: "No health care facility or health care provider and no employee of a health care facility or health care provider may take disciplinary action against, or threaten to take disciplinary action against, an employee who reported in good faith... ."
¶ 76. "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Kalal, 271 Wis. 2d 633, ¶ 39 (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)). As this court has previously explained, "[i]t is not reasonable to presume that the legislature preferred elegance over precision in its wording of the statute. The more reasonable presumption is that the legislature chose its terms carefully and precisely to express its meaning." Ball v. Dist. No. 4, Area Bd. of Vocational, Technical & Adult Educ., 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984).
¶ 77. Further, it is a well-established canon of statutory construction that each word in a statute should have independent meaning so that no word is redundant or superfluous. Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶ 22, 322 Wis. 2d 21, 777 N.W.2d 67. Thus, "[w]hen the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings." Id.
*446 ¶ 78. The legislature used both "employee" and "person" throughout the Health Care Worker Protection Act.[3] When it came to defining the coverage of the Act, the legislature chose to use the words "any person." Wis. Stat. § 146.997(3)(a). Under the canons of statutory construction, which the majority ignores, the express language of the statute referring to "any person" should not be interpreted as "employee."
¶ 79. In reading the words "any person" as meaning "employees," the majority limits the Health Care Worker Protection Act beyond its terms. In its analysis, the majority cites to other provisions in the Act and reasons that the words "any person" must mean employees working for compensation or tangible benefit. It asserts that the disciplinary actions the Act prohibits *447 and the remedies the Act provides could not apply to unpaid workers. Majority op., ¶¶ 36, 38, 45. Not only is this suggestion not supported by the language of the Act, but it also reads its terms more narrowly than they are written.
¶ 80. The Health Care Worker Protection Act adopts the definition of "discipline" provided by Wis. Stat. § 230.80(2), which includes such actions of the employer that result in a dismissal, transfer, removal of assigned duty, reprimand, verbal or physical harassment, denial of education or training, and reassignment. It is unclear why these employer actions would not be applicable to unpaid workers.
¶ 81. Similarly, it is unclear why the whistle-blower's remedies permitted by the statute could not apply to unpaid workers.[4] As explained by the majority, Wis. Stat. § 146.997(4)(a) details how employees may report violations to the DWD.[5] If the DWD determines that there have been violations, it may award remedies as described in Wis. Stat. § 111.39. Majority op., ¶¶ 35-36. Among the remedies suggested by Wis. Stat. § 111.39(4)(c) is reinstatement. The court has also determined that aggrieved workers are entitled to attorney fees. Watkins v. Labor & Indus. Review Comm'n., 117 Wis. 2d 753, 765, 345 N.W.2d 482 (1984). An unpaid intern whose internship had been terminated for reporting a violation of the law may find reinstatement to be a *448 desired remedy. The intern is also likely to want attorney fees in seeking that reinstatement. Nothing in the Act limits these remedies to only paid employees. Nothing in the express language of the Health Care Worker Protection Act limits its protections only to individuals working for compensation as the majority suggests.
¶ 82. In paragraphs 47-48, the majority sets up its own straw man only to quickly knock it down. In essence, it warns that the sky is falling if there is a literal translation of the statutory words "any person." For example, the majority suggests that a literal translation would mean that anybody in the world could file a complaint, "absolutely anybody." Majority op., ¶ 48. And, if that does not frighten the reader enough, in a footnote, the majority expounds further to observe that "person includes all partnerships, associations and bodies politic or corporate." Id., ¶ 47 n.17. Having set up the straw man that "any person" could include a body politic in Timbuktu filing a complaint, the majority warns "there would be no stopping point" and that a literal translation would "jeopardize the structure and efficiency of administrative agencies and regulatory bodies in the State." Id.
¶ 83. The problem with the majority's straw man argument, like all straw men arguments, is that it sets up an argument that no one is advancing. Instead, I determine that "any person" includes any person who faces disciplinary action from a health care facility for reporting possible violations that pose a risk to public health or safety.
¶ 84. I acknowledge that ambiguity arises because the Health Care Worker Protection Act incorporates the definition of "disciplinary action" found in Wis. Stat. §230.80. Wis. Stat. § 146.997(l)(b). Wisconsin Stat. § 230.80 defines "disciplinary action" as "any action taken with respect to an employee which has the effect, in whole *449 or in part, of a penalty, including but not limited to any of the following.. .." (emphasis supplied). Where this definition conflicts with the language in the Health Care Worker Protection Act, it creates ambiguity.
¶ 85. However, "[w]hen a statute is ambiguous, the legislature is presumed to have intended an interpretation that advances the purposes of the statute." Belleville State Bank v. Steele, 117 Wis. 2d 563, 570, 345 N.W.2d 405 (1984). The purpose of the Health Care Worker Protection Act is evident from its language. It protects workers who report that "the quality of any health care service provided by the health care facility or health care provider ... violates any standard . .. and poses a potential risk to public health or safety." Wis. Stat. § 146.997(2)(a). If the law protects workers who report patient quality of care problems, necessarily it is meant to encourage those workers to do so. Thus, on its face, the statute is aimed at protecting patients.
¶ 86. The majority's approach undermines this purpose. Although the majority acknowledges that the purpose of the statute is to protect patients, it simultaneously chastises Masri for "engrafting] purposes onto the statute that are not embedded in its text." Majority op., ¶ 51. Then, without explanation, the majority states that "[d]eclining to broaden the definition of 'employee’ to include unpaid interns does not contradict the statutory purposes." Majority op., ¶ 54. It is hard to conceive how a limited reading of the Health Care Worker Protection Act would not run counter to its goal of patient protection. If fewer health care workers report problems with patient care, there will be fewer opportunities for those problems to be fixed and patients will be left at risk.
¶ 87. Due to the remedial purpose of the Health Care Worker Protection Act, our canons of statutory *450 construction dictate that its provisions be liberally construed. Watkins, 117 Wis. 2d at 762 (statutes containing broad remedial language shall be liberally construed). Courts generally construe whistleblower protection laws broadly to achieve their protective goals. See, e.g., Passaic Valley Sewerage Comm'rs v. U.S. Dep't of Labor, 992 F.2d 474, 478-79 (3d Cir. 1993) (terms used in whistleblower protection law, which was aimed at encouraging workers to aid in enforcement of Clean Water Act and nuclear safety statutes, broadly construed to achieve that goal); Rayner v. Smirl, 873 F.2d 60, 64 (4th Cir. 1989) (determining that a more inclusive interpretation of "employee" is warranted for the whistleblower provisions in the Federal Railway Safety Act, aimed at promoting rail safety); Phillips v. Interior Bd. of Mine Operations Appeals, 500 F.2d 772, 781 (D.C. Cir. 1974) (narrow construction of the whistleblower provision in Mining Safety Act would be contrary to its purpose of increasing safety in mines). A similar liberal construction of the Act's scope would support the Health Care Worker Protection Act's purpose of protecting patients.
¶ 88. When liberally construed, the conflict between the Act's scope as dictated by the "any person" language and the definition of "disciplinary action" should be cured by deferring to the language defining the scope of the Act. The Health Care Worker Protection Act incorporates the definition of "disciplinary action" from a statute on state employee protection. Wis. Stat. §§ 146.997(l)(b), 230.80(2). In the context of defining state employee protection, the language in the definition referring to employees is appropriate. Wis. Stat. § 230.80(2) ("Disciplinary action" means any action taken with respect to an employee ..."). However, the use of the term "employee" in Wis. Stat. § 230.80(2) was not intended to delineate the scope of the Health Care *451 Worker Protection Act. That function is served by the specific language in Wis. Stat. § 146.997(3)(a).
¶ 89. Wisconsin Stat. § 146.997(3)(a) more specifically addresses the scope of the Health Care Worker Protection Act, therefore its provisions should govern. This is consistent with the canon of statutory construction that "[w]here a general statute and a specific statute relate to the same subject matter the specific statute controls." Wauwatosa v. Grunewald, 18 Wis. 2d 83, 87, 118 N.W.2d 128 (1962).
¶ 90. The language of the Health Care Worker Protection Act indicates its remedial purpose of protecting patients. This is best achieved by interpreting the words "any person" to mean what they say. See Kalal, 271 Wis. 2d 633, ¶ 39. Accordingly, I conclude that the Act protects any person from facing disciplinary action for reporting quality of care issues. This includes Masri.
Ill
¶ 91. Even if the majority were correct that "any person," as used in the Health Care Worker Protection Act, refers only to "employees," that does not mean that "employee" should be accorded a narrow definition centered on compensation. It is worth noting again that statutes should be construed liberally to effectuate their purpose. State v. Zielke, 137 Wis. 2d 39, 47, 403 N.W.2d 427 (1987). Accordingly, "employee" should be read broadly to meet the purpose of protecting patients.
¶ 92. The majority suggests that the Labor and Industry Review Commission (LIRC) has always construed "employee" as an individual working for an employer in exchange for wage or compensation. Majority op., ¶¶ 26, 37 n.14. That is incorrect.
¶ 93. LIRC decides appeals in three administrative areas: workers compensation law, unemployment *452 compensation law, and equal rights law (which includes the Health Care Worker Protection Act). In the context of both workers compensation and unemployment compensation, LIRC has concluded that an individual can be considered a statutory employee to effectuate the purposes of the statute even when the individual has not received a dime from the employer and has never set foot on the employer's premise.
¶ 94. The appeals that LIRC review arise from the decisions of the Department of Workforce Development (DWD). Here, the DWD dismissed Masri's complaint without further investigation, concluding that because she was not compensated by MCW for her work, Masri was not a covered employee under the Act.
¶ 95. Yet, the DWD has previously explained that the definitions of "employee" in the different statutes that LIRC administers will vary depending on the purpose of the statute. It notes that the definitions "are likely to be similar, but rarely will they be identical. The Legislature has determined that there are different policy considerations for each program, that in turn require slightly different definitions [of 'employee']." Department of Workforce Development, "Independent Contractors and Worker's Compensation in Wisconsin" at 6 (June 2003), available at http://dwd.wisconsin. gov/dwd/publications/wc/WKC_13324_Epdf (emphasis supplied).
¶ 96. For example, in Green Bay Packaging, Inc. v. Dep't of Indus., Labor & Human Relations, 72 Wis. 2d 26, 36, 240 N.W.2d 422 (1976), the court determined that for purposes of the Worker's Compensation Act an employee of a subcontractor qualifies as a statutory employee of the general contractor when the subcontractor regularly furnishes to a principal employer materials or services which are integrally related to the finished *453 product or service. It explained that "the workmens' compensation law of this state must be liberally construed to reach the objectives of that law," and that "the purpose of this legislation was to protect employees of irresponsible and uninsured subcontractors." Id. at 37.
¶ 97. Similarly, as noted in Sears, Roebuck & Co. v. Dep't of Indus., Labor, & Human Relations, 90 Wis. 2d 736, 280 N.W.2d 240 (1979), the definition of "employee" for purposes of the unemployment compensation law "mean[t] any individual who is or has been performing services for an employing unit, in an employment, whether or not he is paid directly by such employing unit." Id. at 742 (quoting Wis. Stat. § 108.02(3)(a) (1971)). The court explained that although an individual may be an independent contractor, "this does not necessarily bar him from being an employee under the act. His status under the act must be determined from the act itself in view of the purpose of the act as declared therein." Id. at 743 (quoting Moorman Mfg. Co. v. Indus. Comm'n, 241 Wis. 200, 203, 5 N.W.2d 743 (1942)).
¶ 98. In this case we are presented with an issue of first impression. The Health Care Worker Protection Act does not define "employee." We are asked to determine if it is more reasonable to liberally construe the term "employee" in the Health Care Worker Protection Act to effectuate the Act's purpose, as the court has done with the Workers' Compensation Law and Unemployment Compensation Law, or to use a limiting test, narrowly focusing only on compensation between the employer and employee. Both LIRC and the majority have opted for a narrow interpretation.
¶ 99. Contrary to the majority, I conclude that it is more reasonable to construe "employee" liberally to effectuate the remedial purpose of the Act. In doing so, I would apply the test for a master-servant relationship *454 as found in our common law. The broad definition of employee from the master-servant test is more consistent with the remedial purpose of the Health Care Worker Protection Act because it enables more workers to report quality of care issues and meets the statute's purpose of protecting patients.
¶ 100. Use of the master-servant test is also consistent with our caselaw. Where a term in a statute is undefined or not helpfully defined, the Wisconsin Supreme Court has referred to the common law definition of the term to aid in interpretation. For example, it utilized this approach in interpreting "employee" as used in the Unemployment Compensation Act. Wisconsin Bridge & Iron Co. v. Indus. Comm'n, 233 Wis. 467, 478, 290 N.W. 199 (1940). At the time, the statutory definition of "employee" was "any individual employed by an 'employer' and in an 'employment.'" Id. at 477. The court stated that this implies that the term "employee" and "employer" are to be given their common-law meaning. Id. The court explained that "there is nothing in the definition there given to indicate anything different from the common-law concept," and that if the legislature "had intended to change the ordinary and commonly understood meaning of the words 'employer' and 'employee' they would have used language expressly so declaring." Id. at 478.
¶ 101. Likewise, the United States Supreme Court has explained that "[w]here Congress uses terms that have accumulated settled meaning under. . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739 (1989) (quoting NLRB v. Amax Coal Co., 453 U.S. 322, 329 (1981)).
*455 ¶ 102. Accordingly, when interpreting federal statutes that use the term "employee" without helpfully defining it, the Supreme Court construes that term as descriptive of "the conventional master-servant relationship as understood by common-law agency doctrine." Id. at 740. It has consistently used this approach to interpret a number of federal statutes. See, e.g., Clackamas Gastroenterology Assocs. v. Wells, 538 U.S. 440, 448 (2003) (using the common-law definition of master-servant relationship when interpreting the meaning of employee under the Americans with Disabilities Act); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (construing "employee" under Employee Retirement Income Security Act based on common law principles of agency); Reid, 490 U.S. at 739 (construing "employee" as used in the Copyright Act); Kelley v. Southern Pac. Co., 419 U.S. 318, 323-24 (1974) (using common-law principle of master-servant relationship to determine employment statutes under the Federal Employers' Liability Act); NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968) (construing "employee" under the National Labor Relations Act based on common-law agency principles).
¶ 103. In a similar vein, the Wisconsin Court of Appeals has determined that "the factors relevant to a master/servant relationship are relevant to deciding whether [the defendant] was a state employee" for purposes of Wis. Stat. § 893.82. Lamoreux v. Oreck, 2004 WI App 160, ¶ 22, 275 Wis. 2d 801, 686 N.W.2d 722.
¶ 104. The common law definition of a master-servant relationship is much broader than the definition that the majority applies here, which is limited to whether or not a worker receives compensation or tangible benefits. At federal common law, a determina *456 tion of whether a master-servant relationship exists takes into account a number of factors, including:
the hiring party's right to control the manner and means by which the product is accomplished.... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
Darden, 503 U.S. at 323-24 (quoting Reid, 490 U.S. at 751-52). "[A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive." NLRB v. United Ins. Co. of America, 390 U.S. at 258. Consistent therewith the Restatement (Third) of Agency, § 7.07(2)(b) states: "the fact that work is performed gratuitously does not relieve a principal of liability."
¶ 105. Wisconsin courts use almost identical factors in determining whether a master-servant relationship exists in the context of tort liability. As explained in Pamperin v. Trinity Mem'l Hosp., 144 Wis. 2d 188, 199, 423 N.W.2d 848 (1988), the dominant test in determining whether an individual is a servant is "[t]he right to control."
¶ 106. Other factors to consider include: "the place of work, the time of the employment, the method of payment, the nature of the business or occupation, which party furnishes the instrumentalities or tools, the intent of the parties to the contract, and the right of *457 summary discharge of employees." Id. at 199. As with the federal cases, no one factor is determinative and "[a] servant need not be under formal contract to perform work for a master, nor is it necessary for a person to be paid in order to occupy the position of servant." Kerl v. Rasmussen, Inc., 2004 WI 86, ¶ 22, 273 Wis. 2d 106, 682 N.W.2d 328; Petzel v. Valley Orthopedics Ltd., 2009 WI App 106, ¶ 16, 320 Wis. 2d 621, 770 N.W.2d 787 (same).
¶ 107. Contrary to the majority, I determine that it is more reasonable to interpret the Health Care Worker Protection Act with the broad master-servant test from our common law than a dictionary definition of the term "employee." This broad test is consistent with the statute's purpose. Further, Wisconsin and United States Supreme Court caselaw establishes that it is the appropriate test to apply when a statute uses the term "employee" without providing a helpful definition.
¶ 108. Applying the master-servant factors to the case at hand reveals that Masri qualifies as an employee. Throughout Masri's internship, MCW had the right to control her actions. Masri was placed in MCW's transplant surgery unit at Froedtert Hospital. She worked 40 regularly scheduled hours per week as a psychology intern. Dr. Anderson had obtained a grant to fund Masri's work. Masri's duties included interviewing patients and staff, reviewing and assessing medical records, signing psychological reports, preparing patient progress notes, and attending staff meetings. In that role, MCW granted Masri full access to HIPAA protected patient records and MCW's facilities. This suggests the intent to have an employee-employer relationship. Further, MCW had the right to summarily discharge Masri at any time. These factors outweigh *458 the fact that Masri was not paid for her services and suggest that she should be considered an employee for purposes of the Health Care Worker Protection Act. Accordingly, I would reverse the court of appeals and remand the case for an investigation and determination of whether MCW unlawfully terminated Masri's internship in retaliation for the complaints she made about clinical and ethical concerns.
IV
¶ 109. The parties dispute whether due weight or no weight should be accorded to LIRC's interpretation of the Health Care Worker Protection Act limiting coverage to paid employees. These levels of deference are analytically equivalent as both require the court to independently interpret a statute. Racine Harley-Davidson v. State Div. of Hearings & Appeals, 2006 WI 86, ¶ 20, 292 Wis. 2d 549, 717 N.W.2d 184. Even under due weight deference, the agency's interpretation will not be adopted if the court determines an alternate interpretation is more reasonable. Id.
¶ 110. As discussed above, I conclude that there is a more reasonable interpretation of the Health Care Worker Protection Act than the limited one accorded by LIRC. The Health Care Worker Protection Act should be interpreted as meaning what it expressly provides: its coverage extends to "any person." Further, even if the Act's coverage was limited to employees only, the canons of statutory construction mandate that "employee" be liberally construed in order to fulfill the remedial purpose of the Act. Under either approach, Masri should be afforded coverage. Accordingly, I respectfully dissent.
*459 ¶ 111. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 Masri asserts that had Mayer not cut her off, she would have reported the following additional incidents:
1) Dr. Anderson ordering her not to speak to anyone about an "off-list" organ transplant recipient who paid $25,000.00 for a kidney harvested from Pakistan;
2) A social worker on the transplant unit making an unethical recommendation to eliminate a transplant candidate based on a subjective moral judgment of the candidate's personal life and educational background; and
3) Dr. Anderson's order that Masri interview and assess a mentally incompetent and semi-conscious ICU patient to disqualify that patient from the priority transplant list.

 For example, Wis. Stat. § 146.997 states:
(2) Reporting protected.
(a) Any employee .. . who is aware of any information, . .. that would lead a reasonable person to believe any of the following may report that information to ... any employee of the health care facility ....
(b) An agency [shall], . . . notify the health care facility or health provider .... The notification and summary may not disclose the identity of the person who made the report.
(c) Any employee of a health care facility or health care provider may initiate, . . . any action or proceeding....
(d) Any employee . . . may provide any information relating to an alleged violation
(3) Disciplinary action prohibited.
(b) ... no employee .. . may take disciplinary action against. . . any person on whose behalf another person reported in good faith any information ... or because the . . . employee believes that another person reported in good faith any information ... on that person's behalf. . . .

 The majority's analysis in this respect appears circular— unpaid workers are not covered by the Act because they cannot seek its remedies, yet they cannot seek the Act's remedies because they are unpaid workers.

 Although Wis. Stat. § 146.997(4)(a) uses the term "employee" in describing how to report violations, as more fully discussed below, nothing in the Health Care Worker Protection Act limits the term "employee" to an individual working in exchange for compensation.